**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| COLONIAL PENN LIFE INSURANCE COMPANY, | § § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-CV-01233 |
| | § | |
| ASHLEY E. PARKER, *et al.,* | § | |
| *Defendants.* | § | |

<u>**MEMORANDUM & ORDER**</u>

Before the Court are a Motion for Summary Judgment filed by the Defendants [Doc. No. 18] and the Plaintiff's Response thereto [Doc. No. 22] and a Motion for Summary Judgment filed by the Plaintiff [Doc. No. 23] and the Defendants' Response thereto [Doc. No. 26] as well as various replies and ancillary briefing.

**I.**

The underlying facts are basically uncontroverted. Robert Lee Parker ("Parker" or "Decedent"), a veteran, applied for a whole life insurance policy from the Colonial Penn Life Insurance ("Colonial" or "Plaintiff") on October 30, 2014. The policy was to have benefits totaling $20,000, and Ashley E. Parker and Aden L. Barron ("Defendants"), as beneficiaries, were to share that amount on a 50%-50% basis, should decedent die. On November 20, 2014, Plaintiff issued the policy.

On June 22, 2015—some seven months later—Parker died in a motor vehicle accident (per the death certificate). The Defendants timely made a claim for the face amount of the policy. There is no dispute that the policy contract number is NW66886552, that it became effective as of November 20, 2014, and that it had a face amount of $20,000. There is also no dispute that the Defendants are the beneficiaries of any proceeds due and owing pursuant to the policy. Further,

it is without question that the policy includes a standard two-year incontestability clause:

> Except for non-payment of premium, this policy is incontestable after it has been in force during the insured's lifetime for two years after the Effective Date.

As stated above, Parker's death occurred within seven months of the effective date. Consequently, this clause does not serve to bar the Plaintiff's contest herein.

## II.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the nonmovant to show that the Court should not grant the motion. *Celotex Corp.*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255.

## III.

The instant controversy stems from two issues: (1) Colonial claims that Parker failed to pay the policy premiums and that the policy lapsed in April of 2015; and (2) Colonial claims that Parker did not accurately fill out the application and that, had the correct information been supplied, the policy would have never been issued. It is for these reasons the Plaintiff

2

rescinded/cancelled the contract of insurance and refused the Defendants' claim. In their briefing, the Defendants do not contest the former proposition regarding Parker's lapse in payments with either factual or legal arguments. They do contest at length the application issue and argue vehemently that Colonial has not shown fraud or intent to deceive on Parker's part and therefore cannot prevail on this motion.

**IV.**

### A.    Non-Payment of Premium

Colonial has claimed and provided appropriate summary judgment evidence supporting its position that Parker had a monthly premium of $98.25. Parker made the premium payments without problems in December of 2014 and in January and February of 2015; however, in March of 2015 he made his premium payment late and made no payments thereafter. Colonial sent premium notices in April of 2015 for $98.25 and May of 2015 for $196.50 ($98.25 for May and the past due $98.25 amount for April), but neither invoice was paid nor did Parker otherwise respond to these notices.

The policy states:

> You have a grace period of 31 days after the due date to pay any premium after the first. Coverage will stay in effect during the grace period; however, if death occurs any unpaid premiums will be deducted from the Death Benefit. If any premium is not paid when due or during the grace period, this policy will terminate at the end of the grace period, subject to the Non-forfeiture Benefits Provision. [This policy had no accrued cash value and consequently had no non-forfeiture benefits.]

The 31-day grace period ended on May 21, 2015 without any payments. In June of 2015, Colonial sent a letter cancelling the policy as of April 20, 2015 due to the missed April and May

payments.[1] Thus, the policy had lapsed prior to Parker's passing.[2]

Defendants have offered no summary judgment evidence and very little argument to counter the Plaintiff's contention that there was no policy in place due to the failure to pay premiums. In fact, in their response to this section of the Motion for Summary Judgment, the Defendants concede that they cannot admit or deny most of Colonial's contentions.[3] They certainly do not bring forth any admissible summary judgment evidence to create an issue of material fact. That being the case, Defendants cannot prevail as a matter of law on any cause of action asserting either a claim for breach of the policy, a claim concerning the Plaintiff's handling, or any claims relating to Parker's death. Plaintiff's motion for summary judgment is hereby granted on this point.

**V.**

Plaintiff's second contention—that Parker's insurance application contains critical misstatements—also has merit. Below, the application is reproduced in pertinent part:

---

[1] While not directly pertinent to the issues in this case, in June, Colonial received a letter mailed in May from Americo Financial Life and Annuity Company, advising that the Colonial policy might be replaced because Parker found the Colonial policy to be too expensive.

[2] The letter informing Parker of the cancellation was apparently dated the same day that Colonial was informed of Parker's death. While somewhat coincidental, the Defendants, however, do not raise this as an issue to the pending summary judgment motion.

[3] In their response, Defendants on occasion mistakenly refer to themselves as "plaintiffs." Nevertheless, it is clear from the context that they have no controverting evidence on this issue.

**COLONIAL PENN LIFE INSURANCE COMPANY, Philadelphia, PA 19181**

**APPLICATION for Whole Life Insurance**

Member#: 3BRTHA3
Source Code: G234VSB842

| Proposed Insured |
|---|
| Mr. Robert Parker<br>2018 Dearns St<br>Houston, TX 77093-7908 | Phone Daytime: ( _832_ ) _207 - 1835_<br>Phone Evening: ( _____ ) _SAME_<br>E-mail Address: _RLPARK4931 @ YAHOO; COM_<br>Age: _60_  Date of Birth: _____ 1954  ☒ Male  ☐ Female |

Coverage Amount Requested (check only one amount) → ☐ $10,000  ☒ $20,000  ☐ $30,000  ☐ $40,000  ☐ $50,000

Is this insurance intended to replace or change any existing life insurance or annuity plan? ☐ Yes  ☐ No · · ·

Name of Insurance Company _COLONIAL PENN_  Plan of Insurance _Whole Life_  Amount of Insurance _20,000°°_

Beneficiary Designation (will be divided equally unless noted below)

A. _ASHLEY ELAINE PARKER_  _DAUGHTER_  _50%_
   Beneficiary Name (Please Print)    Relationship to You    % Share    Beneficiary E-mail Address

B. _ADEN LEE BARRON_  _GRAND SON_  _50%_
   Beneficiary Name (Please Print)    Relationship to You    % Share    Beneficiary E-mail Address

| Payment Options (Send No Money Now) |
|---|

I wish to pay (check one):

☒ Monthly (available for automatic bank deduction or credit card)

☐ Quarterly (bill me for 3 months)  ☐ Semi-annual (bill me for 6 months)  ☐ Annual (bill me for 12 months)

| Statement of Health |
|---|

Height: _5_ ft _9_ in  Weight: _195_ lbs

1. Are you using a wheelchair, using oxygen to assist with breathing, confined to a hospital or nursing facility, receiving home health or hospice care, or are you currently disabled due to illness? ...... ☐ Yes ☒ No

2. Have you had or been treated for Acquired Immune Deficiency Syndrome (AIDS), AIDS related complex (ARC), or tested positive for antibodies to the Human Immunodeficiency Virus (HIV)? ...... ☐ Yes ☒ No

3. In the past 3 years, have you had or been treated for:
   a. Chronic obstructive lung disease, coronary artery disease, or any disease or disorder of the heart, brain or liver? ...... ☐ Yes ☒ No
   b. Cancer, chronic kidney disease or kidney failure, muscular disease, mental or nervous disorder, drug or alcohol abuse, or have you been hospitalized for diabetes? ...... ☐ Yes ☒ No
   c. Any chronic illness or condition which requires medication or periodic medical care, or have you been advised to have surgery which has not been performed? ...... ☐ Yes ☒ No

4. Are you currently undergoing evaluation, diagnostic testing or treatment, or been advised to have testing not yet completed? ...... ☐ Yes ☒ No

Question 3b and its answer are at issue:

In the past 3 years have you had or been treated for:

\* \* \*

b. Cancer . . . mental or nervous disorder, drug or alcohol abuse . . .

As can be seen, Parker answered, "no" by marking the corresponding box. The application continues on to stress that the accuracy of the information provided is important. Directly above Parker's signature it states:

I have read the questions and my answers are true and correct to the best of my knowledge and belief . . . The application will be made part of any policy issued and, within the first two years, a material misrepresentation or answer can be used to contest coverage as of its effective date or to deny a claim.

The application was signed by Parker and dated October 30, 2014. Thus, his answers as to the preceding three-year period should cover treatment back to October 30, 2011. Colonial claims that there is overwhelming evidence of both alcohol and drug abuse during this time period. They have also presented uncontroverted evidence that in this kind of application and

5

policy that had Parker, or any other applicant for that matter, answered accurately with a "yes" instead of the "no" with which he responded, the application would have been automatically rejected and no policy would have been written.

## A.     The Evidence of Drug and Alcohol Abuse[4]

Parker, as a veteran, was receiving most, if not all of his medical treatment and counseling at the main Houston Veterans Administration ("VA") Hospital Facility (more formally known as the Michael E. DeBakey Veterans Administration Medical Center). Those records are included in Plaintiff's summary judgment evidence.[5] The Court below will summarize the records provided in chronological order providing the date and quoting the records.[6] The following excerpts are pertinent to Plaintiff's claims:

| November 16, 2011 | PROBLEM: Substance Abuse: Mr. Parker first said that he last used cocaine "a month ago", then he said that he used "over Labor Day in September". Writer expressed concern about his use and encouraged Veteran to get back involved with SDTP. Veteran shared that he drinks alcohol every Sunday during football games. "I have two or three". Veteran provided the following input for this monthly meeting: Veteran shared that he use [sic] to be on medications for |

---

[4] Colonial bases its contention solely on the drug and alcohol abuse answer despite the fact that some medical records suggest that Parker had been treated for depression in the past and the records indicate in places that he was being treated for depression during the time in question.

[5] These records are found in Exhibits A and B to Document 22 and Exhibits A and B to Document 23. All medical references are found in one of these four exhibits.

[6] The medical records consist primarily of progress notes, test results, and interviews with the Decedent. At times dates are hard to discern either because of the length of the record or because there are multiple dates (such as when it was dictated or written as opposed to the actual performance date of the medical treatment or when the record was signed). The Court has made no effort to include all of the references to drug and alcohol abuse—and has not attempted to include any discussion of Decedent's mental health issues (although some topics such as depression are clearly mentioned in the notes quoted) as those are not the subject of Colonial's motion. Also, the operative date for determining the application's accuracy is obviously the application date (October 30, 2014) and the three preceding years. One will note the inclusion of one 2015 record. While not directly relevant it is included because it mentions events in the relevant three-year period. Finally, there are places where the records themselves reference dates before the relevant three-year period and while the Court has attempted to minimize those references some inclusion was unavoidable. None of the evidence either before or after the three-year period was used by the Court in reaching its opinion. Any emphasis was added by the Court unless otherwise indicated.

| | depression however he never took them consistently. He denied any current symptoms besides "feeling tired all the time". Writer talked with Veteran about rescheduling an appt with his psychiatrist he recently missed- see chart. |
|---|---|
| December 19, 2011 | PROBLEM: Substance Abuse<br>Veteran denies any cocaine use since his last report of use which was a few months ago, Veteran states that he continues to drink on the weekend. Per Veteran his drinking has increased, "I am drinking more than I plan to drink". Per Veteran he wants to stop altogether-*"maybe I'll ask my doctor for those pills again to help me stop"*. "My personality changes, I'm more argumentative when I drink". Veteran identified needing to change his "thinking" related to drinking. Writer reflected on Veteran's reasons for wanting to stop drinking and how his alcohol use is negatively affecting his life.<br><br>PROBLEM: Mental Health Care<br>Veteran has an upcoming appt with his psychiatrist the end of this month. He plans to speak with his Dr. about his alcohol use/treatment. |
| December 30, 2011 | S: 57 yo AAM with hx of cocaine and MJ dependence in reported full early remission and alcohol abuse who was last seen in 9/2011 presents for scheduled f/u.<br><br>P: was irritable upon approach, stated "why did you call me in for, I'm very busy today". Pt proceeded to talk about how he is moving today and how he does not like to move in the mid of the holidays. *Pt admits that he has been drinking more than b/f, 6-pack beer daily. States he realize [sic] he needs to stop and wants to get back on Acamprosate again, since it helped him in the past.*[7] Pt has several bottles left over from a yr ago. States he has been feeling more "stress" b/c of his move but as well as trying to look for job [sic] and the holiday season. States he started drinking more b/c alcohol is more relaxing to him and helps him to sleep. States Hydroxyzine was only moderately helpful with sleep. States his mood has been a little down 2/2 recent stressors. States no SI/HI/AVH.<br><br>Alcohol: 6-pack per day<br>Drugs: states none: however, when asked to give UDS, pt adamantly refused, stating, he just went and unable to do |

---

[7] Acamprosate is a drug used to treat alcohol dependency.

| | so, pt also refused to wait, stating he needs to go in order to continue his move.<br><br> * * * <br>A/P:<br><br>AXIS I: *Alcohol Abuse*; Cocaine and MJ Dependence – in reported full, early remission (but refused UDS today)<br>AXIS II: Def<br>AXIS III: see prob list<br>AXIS IV: employment, move<br>AXIS V: 60<br><br>1. *SUBSTANCE ABUSE/DEPENDENCE*: Pt. encouraged to seek sobriety. Discussed with pt about setting up as a schedule to cut down on drinking instead of "cold turkey". Pt declined re-enrolling in the program stating he will not have time.<br><br>2. MEDICATIONS:<br>- Restart Acamprosate 666mg TID as *pt reported it was helpful for his alcohol use in the past and requested to be placed back on it*<br>- Inc Hydroxyzine to 25mg Qday PRN anxiety and 50mg QHS PRN sleep<br>- Discussed risks/benefits/side effects and alternatives of medications.<br><br>3. CONSULTS/REFERRALS: none<br><br>4. LABS: Pt refused UDS today, stating he just went and will not be able to wait long enough to go again. Informed pt that UDS will be documented as a positive. |
|---|---|
| January 24, 2012 | PROBLEM: Substance Abuse<br>Veteran reports that he continues to drink however he has cut back significantly. Only drinking on the weekend and 'an occasional beer'. Veteran states that he is very motivated with his new job opportunity therefore plans to quit entirely. |
| February 27, 2012 | ACTIVE PROBLEMS:<br>SUBSTANCE INDUCED MOOD<br>     , resolved<br>Hypertrophy (Benign) of Prostate without Urinary o [sic]<br>Rehabilitation, Vocational (ICD-9-CM V57.22) |

| | |
|---|---|
| | Rehabilitation, Vocational (ICD-9-CM V57.22)<br>Elevated Prostate Specific Antigen (PSA) (ICD-9-CM [sic]<br>Assault by other Specified Means (ICD-9-CM E968.8)<br>Tobacco Use Disorder (ICD-9-CM 305.1)<br>Other and unspecified alcohol dependence, in remis [sic]<br>Cocaine dependence, in remission (ICD-9-CM 304.23)<br>Cannabis dependence, episodic use (ICD-9-CM 304.32 [sic]<br>Other (or unknown) Substance Dependence (DSM-IV 30<br>Cocaine Abuse, Episod [sic]<br>Neck Pain (ICD-9-CM 723.1)<br>Hypertrophy (Benign) of Prostate with Urinary obst [sic]<br>Arthritis (ICD 9 CM 716.90)<br>Retinopathy (ICD-9-CM 362.10)<br>Alcohol Abuse<br>Cocaine Abuse<br>Legal problems/circumstances<br>       Probation until 2004<br>Benign essential hypertension<br>Sinusitis (ICD-9-CM 473.9)<br><br>HPI: Pt is a 57 y/o BLACK OR AFRICAN AMERICAN veteran with htn, substance dependence (alcohol, cannabis, cocaine), tobacco use 1 ppd since age 29.<br><br>          \* \* \*<br><br>*He reports drinking 40 oz of beer a day.* |
| March 22, 2012 | Veteran opened up about his time in the service and discharge from the Army. Apparently Veteran was demoted from an E5 to a E3 due to a dirty UDS. Veteran shared that his drug problem began in the service and worsened severely after his discharge. Veteran shared that he has made progress in dealing with his anger. "I use [sic] to not be able to handle being angry". Veteran shared that "having my own place makes me feel that I have something to show for all these years . . . . It's helped me to mature" |
| April 2, 2012<br>(Telecom) | Called Veteran in response to a message he left on my voicemail Sunday 4/1/12 at 9pm. On message Veteran sounded impaired he stated that he has messed up over the weekend. On message Veteran had extended an invitation to myself and family to his birthday party on Saturday. |

| | |
|---|---|
| | Veteran stated that he did not remember calling writer. Inquired about Veteran's use over the weekend. He reported alcohol however denied drug use. Writer talked with Veteran about his work related struggles and better ways to cope with his difficulty finding work. Veteran shares that he has been real depressed and turned to alcohol however states that he is back on track. Talked with Veteran about treatment options and addressing his use before it snowballs. Addressed the issue of writer not being able to spend time with him outside of work related reasons. |
| April 8, 2012 (Admission for Stable Wound) | PMH:<br><br>SUBSTANCE INDUCED MOOD<br>Hypertrophy (Benign) of Prostate without Urinary obstruction and other lower Uri [sic]<br>Rehabilitation, Vocational (ICD-9-CM V57Rehabilitation, Vocational (ICD-9-CM V57.22)<br>Elevated Prostate Specific Antigen (PSA)Assault by other Specified Means (ICD-9-CM E968.8)<br>Tobacco Use Disorder (ICD-9-CM 305.1) Other and unspecified alcohol dependence, in remission (ICD-9-CM 303.93)<br>Cocaine dependence, in remission (ICD-9-Cannabis dependence, episodic use (ICD-9-CM 304.32) [sic]<br>Other (or unknown) Substance Dependence Cocaine Abuse, Episod [sic]<br>Neck Pain (ICD-9-CM 723.1)<br>Hypertrophy (Benign) of Prostate with Urinary obstruction (ICD-9-CM 600.01)<br>Arthritis (ICD 9 CM 716.90)<br>Retinopathy (ICD-9-CM 362.10)<br>Alcohol Abuse<br>Cocaine Abuse<br>Legal problems/circumstance<br>Benign essential hypertension<br>Sinusitis (ICD-9-CM 473.9) |
| April 9, 2012 (Phone call) | Before getting off the phone Veteran stated "I'm not going to lie I still drink". He then said "the pain meds the VA gave me last night were real good". Asked if Veteran was drinking on the pain meds, which he denied. Veteran agreed to come into writer's office tomorrow morning. |
| April 10, 2012 | PROBLEM: Substance Abuse |

| | Writer talked with Veteran about two previous incidents where Veteran has left a message while impaired and most recently yesterday when Veteran sounded impaired on the phone. Veteran denies abusing his pain medication and or drinking with medications. Veteran stated he "only had two beers" when he had called writer and then stated he didn't remember because he blacked out. Veteran is drinking 16 oz beers.<br><br>Inquired about Veteran getting out and going to the hospital. Apparently while Veteran was drinking he got in to an altercation with another person who cut him with a knife. Veteran admits to hitting this other person when approached which resulted in this person following him. Veteran appeared very nonchalant when telling writer about incident. Asked veteran how he felt because it appeared that he wasn't very bother [sic] by this incident. *Veteran acknowledged this altercation would not have occurred had he not been drinking and/or in this environment. Encouraged Veteran to look at this incident among others as a major warning sign to his drinking spiraling out of control* and ultimately how this will affect his goal for employment.<br><br>*Veteran talked about the "three parts of me- my educated self, the drug and alcohol self, and my spiritual self" and how "they conflict at times".*<br><br>Per Veteran his last cocaine use was over Christmas. Veteran stated "I'm over it I'll never use it again". Per Veteran he "only drinks on the weekend" when he use [sic] to drink daily. In conversation *Veteran appears to minimize his alcohol use and its consequences.* Veteran stated, "I'd hate to say I have a drinking problem". Asked Veteran what that would look like to him. Per Veteran, "getting into legal trouble and fights with other people on a regular basis". |
| May 9, 2012 | *Per Veteran he is drinking a beer in the morning, afternoon and evening. Veteran continues to minimize his use* and went back on this [sic] previous statement stating he is not drinking because he does not have any money. |
| May 14, 2012 | PROBLEM: Substance Abuse<br>Veteran denies drug use. He continues to drink alcohol regularly. Veteran has no interest in SDTP at this time. |

| | |
|---|---|
| | Veteran appears to minimize the consequences of his alcohol use. |
| June 11, 2012 | PROBLEM: Substance Abuse<br>Veteran reports that his drinking has "gotten better". *He still reports drinking first thing in the morning and throughout the day. Writer expressed concern with Veteran's alcohol use and tendency to minimize his drinking.* Veteran feels that it is "no big deal" because he is not yet driving or working. Veteran feels he will be able to stop once he begins work he will stop. |
| September 20, 2012 | ACTIVE PROBLEMS:<br>SUBSTANCE INDUCED MOOD<br>, resolved<br>Hypertrophy (Benign) of Prostate without Urinary o [sic]<br>Rehabilitation, Vocational (ICD-9-CM V57.22)<br>Elevated Prostate Specific Antigen (PSA) (ICD-9-CM<br>Assault by other Specified Means (ICD-9-CM E968.8)<br>Tobacco Use Disorder (ICD-9-CM 305.1)<br>Other and unspecified alcohol dependence, in remis [sic]<br>Cocaine dependence, in remission (ICD-9-CM 304.23)<br>Cannabis dependence, episodic use (ICD-9-CM 304.32 [sic]<br>Other (or unknown) Substance Dependence (DSM-IV 30<br>Cocaine Abuse, Episod [sic]<br>Neck Pain (ICD-9-CM 723.1)<br>Hypertrophy (Benign) of Prostate with Urinary obst [sic]<br>Arthritis (ICD 9 CM 716.90)<br>Retinopathy (ICD-9-CM 362.10)<br>*Alcohol Abuse*<br>*Cocaine Abuse*<br>Legal problems/circumstances<br>      Probation until 2004<br>Benign essential hypertension<br>Sinusitis (ICD-9-CM 473.9) |
| December 13, 2012 | Veteran called to say that he was fired from his trucking job. Veteran has been employed with this trucking company since June 2012. *Per Veteran "my student told on me". Veteran reports drinking "a beer" in between shifts. Veteran states that the company's policy only allows drinking when an employee is on "home time", which he was not.*<br>Veteran stated "I'm tired of people thinking it's a perfect world" and "that student broke the golden rule of not |

12

| | |
|---|---|
| | telling on someone". Veteran stated "he was jealous of me and I wanted to quit that job anyway". |
| December 17, 2012 | PROBLEM: *Substance Abuse*<br>Writer and Veteran spent time discussing his alcohol use and his personal consequences of use. *Veteran feels his use is most problematic because it is affecting his health.* Veteran states that he chose to drink because he was feeling stressed and overwhelmed at his job. Veteran reflected on ways he could have handled this stress alternatively. Writer explored Veteran's willingness to attend AA or SDTP. Veteran does not feel he can commit due to his belief that he will find a job and be leaving soon. Veteran reports drinking a 6 pack a day since has been home. |
| January 9, 2013 | *Veteran says he is not doing well with his drinking.* Says chat [sic] cutting back on what he purchases at the store did not work. *Per Veteran "beer has caused me a problem most of my life*, even in the military I need to just stop". . . . "or learn to just drink occasionally. . . .I got to come up with something". Veteran is not interested in SDTP or talking with a Dr. about medication options for alcohol. |
| January 31, 2013 | PATIENT'S LIMITATIONS:<br>*Substance abuse/dependence*<br><br>* * *<br><br>Problem: *Veteran exhibits alcohol abuse/dependence as evidenced by self report*<br><br>Goal: Veteran will decrease alcohol use<br><br>Objective: Veteran will report any use of addictive substances.<br><br>Intervention: Provider will use motivational enhancement interventions at clinic appointments Provider: Social Worker Name: Northrup, Sara H. One<br><br>Plan Renewal Date: 1/31/2014 |
| February 22, 2013 | PROBLEM: Substance Abuse<br>Veteran reports switching from beer to wine. Per Veteran |

13

| | |
|---|---|
| | he is drinking less due to the 'wine being so sweet and making him lose his taste for beer'. Veteran vacillates between wanting to stop and only cutting back. Writer continues to work with Veteran on his goals related to drinking using MI interventions.<br><br>Discussed how drinking affected his previous job. |
| March 27, 2013 | PROBLEM: Employment/Disability<br>*Veteran was let go from a tracking job he had just started orientation with in Minnesota. Per veteran, "traces of cocaine" were found in his urine.* Veteran denies that he has used cocaine and says that he believes the lab mixed up the urine samples with another local guy because they didn't want Veteran to have the job. Furthermore, Veteran stated that he believes that because writer is white, writer believes that 'it is a perfect world and these sorts of things don't happen'. Veteran lost another trucking job in December due to drinking alcohol at a time that was against work policy.<br><br>PROBLEM: *Substance Abuse*<br>Veteran denies drug use and minimizes his alcohol use and its negative effects. Writer will continue to engage Veteran with MI strategies. Veteran states, "I'm not drinking much because I am broke" [sic] |
| April 15, 2013 | Medical history includes history of alcohol and cocaine dependence-notes in remission. |
| January 23, 2014 (Telecon/Text) | Received a text from Veteran about leaving town for a job. Writer called Veteran who sounded agitated on the phone, "I'm mad at you for not mailing me the voucher".<br>Veteran states that he got a job and is leaving on Monday and needs clothing. Writer informed Veteran that voucher was mailed and inquired about Veteran's well being since he typically doesn't speak in tone of voice. [sic] Veteran stated he was drinking a beer. Writer asked that Veteran come in to office tomorrow so voucher can be provided and he and writer can speak more in person when he hasn't been drinking [sic] |
| January 24, 2014 | Writer inquired about his alcohol use expressing concern due to his intoxication yesterday on phone call. Veteran stated that he drinks when he isn't employed however he knows he can't drink while working. Veteran is not |

| | |
|---|---|
| | interested in treatment. |
| April 10, 2014 | Other and unspecified alcohol dependence, in remis [sic] Cocaine dependence, in remission (ICD-9-CM 304.23) Cannabis dependence, episodic use (ICD-9-CM 304.32) Other (or unknown) Substance Dependence (DSM-IV 30 [sic] Cocaine Abuse, Episod [sic] (ICD-9-CM 305.62) |
| April 18, 2014 | An alcohol screening test (AUDIT-C) was positive (score = 9). 1. How often did you have a drink containing alcohol in the past year?  Four or more times a week 2. How many drinks containing alcohol did you have on a typical day when you were drinking in the past year?  5 or 6 3. How often did you have six or more drinks on one occasion in the past year?  Weekly * * * ACTIVE PROBLEMS: Housing problems (ICD-9-CM V60.9) LBP (ICD-9-CM 724.2) SUBSTANCE INDUCED MOOD (ICD-9-CM 799.9)  , resolved Hypertrophy (Benign) of Prostate without Urinary o Rehabilitation, Vocational (ICD-9-CM V57.22) Rehabilitation, Vocational (ICD-9-CM V57.22) Elevated Prostate Specific Antigen (PSA) (ICD-9-CM [sic] Assault by other Specified Means (ICD-9-CM E968.8) Tobacco Use Disorder (ICD-9-CM 305.1) Other and unspecified alcohol dependence, in remis [sic] Cocaine dependence, in remission (ICD-9-CM 304.23) Cannabis dependence, episodic use (ICD-9-CM 304.32) Other (or unknown) Substance Dependence (ICD-9-CM [sic] Cocaine Abuse, Episod [sic] (ICD-9-CM 305.62) Neck Pain (ICD-9-CM 723.1) Hypertrophy (Benign) of Prostate with Urinary obst [sic] Arthritis (ICD 9 CM 716.90) Retinopathy (ICD-9-CM 362.10) |

| | |
|---|---|
| | *Alcohol Abuse* (ICD-9-CM 305.00)<br>*Cocaine Abuse* (ICD-9-CM 305.6)<br>Legal problems/circumstances (ICD-9-CM V62.5)<br>      Probation until 2004<br>Benign essential hypertension (ICD-9-CM 401.1)<br>Sinusitis (ICD-9-CM 473.9)<br><br>* * *<br><br>ETOH -- DRINKS WHEN HE IS NOT ON THE ROAD, HAS DECREASED AS HE IS ON THE ROAD A LOT. as of 4/13, pt reports DRINING 2 CANS OF 16 OZ BEER A DAY. per 3/14 MH tele f/u:<br>"PROBLEM: Substance Abuse<br>Veteran denies SA; he stated he drinks but not to impairment; writer advised that drinking and truck driving is problematic on several levels; writer [sic] *stated "drinking is built into me;" writer suggested veteran could attend AA/NA while on the road but veteran was not interested."* |
| April 21, 2014 | PROBLEM: *Substance Abuse*<br>Veteran denies drug use, reports drinking 2 beers a day during his off shift. *Veteran does not feel his drinking is problematic and has no intentions of cutting back.* |
| June 26, 2014 | CURRENT SUBSTANCE ABUSE: alcohol use<br><br>* * *<br><br>*SUBSTANCE ABUSE HISTORY: Veteran reported that he began using drugs in 1978. Since that time he has been to 2 treatments, 1 completed in 2004 and currently in one. Drug of choice was crack cocaine and alcohol.*<br><br>* * *<br><br>DEVELOPMENT OF INDIVIDUAL SERVICE PLAN:<br>      "VETERAN'S INPUT FORM FOR HCHV INDIVIDUAL SERVICE PLAN"<br><br>WHAT DO YOU CONSIDER YOUR MAIN NEEDS/PROBLEMS?<br>      Psychosocial Circumstances:<br>          [X] Housing, [X] Employment,<br>          [ ] Finances, [ ] Legal |

| | *Substance Abuse Treatment:  [X]  Alcohol   [X]  Drugs:* |
|---|---|
| July 28, 2014 | PROBLEM: Substance Abuse<br>Veteran reports his last use of crack cocaine 6 months ago. Veteran reports daily drinking 'around 2'. Veteran voiced no plans to ever quit drinking. Per veteran his job keeps him from drinking more regularly and prevents him from drug use. Continue to use MI approach to address use. |
| September 16, 2014 (Telecon) | S/O: PARKER, ROBERT LEE is 60 y/o, DIVORCED, 0%, Era, BLACK OR AFRICAN AMERICAN MALE with a history of homelessness. SW spoke with veteran on SEP 17, 2014 to discuss progress, monitor psychosocial needs and schedule case management appointment.<br><br>Veteran immediately began talking about having a bad Labor Day weekend where he apparently was supposed to "delivery [sic] a load on Friday, but didn't deliver it until Tuesday". . . . *"I had a party that lasted 3 days, they sent a driver to find me and the truck". . . . "they knew but they didn't fire me".*<br><br>*Veteran stated, "old habits don't fade away" referencing drug and alcohol use,* Veteran talked about his problem beginning in the military.<br>Veteran also shared that he got a ticket for $1,300, (something regarding an overweight load scale)<br>Veteran was upset and began repeating self, Vet sounded intoxicated, writer inquired about his current state. Veteran stated "I have drunk something, but I park in an hour". Writer expressed concern for Veteran driving while intoxicated. Vet stated that he didn't need writer to 'worry'. Writer asked where Veteran was, he stated he was driving in "Wyoming on an empty road". Veteran was difficult to talk with, cutting writer off, jumping from one topic to the next. Writer asked to speak with Veteran when he wasn't driving. Veteran said "call me in the morning when I'm sober". Decided to end call to Veteran's intoxication and added distractibility of conversation. Will follow up with Veteran in the morning. |
| September 17, 2014 (Telecon) | Writer called Veteran to follow up on yesterday's conversation. *Writer expressed concern for Veteran's drinking and driving. Veteran minimized incident, stating that he "doesn't do it often, I only had 30 more minutes of* |

| | |
|---|---|
| | *driving and there is nothing on the road in Montana".* Writer expressed concern for his safety and other people's safety on the road.<br><br>Veteran stated that he has been very upset about his ticket for an oversized load and drank because he wanted to forget about it. Veteran stated that he didn't want to talk anymore about his drinking.<br><br>Writer talked with Veteran about ways he can effectively address ticket issue that did not involve drinking and ways to cope with his feelings regarding the issue. Writer and Vet discussed, listening to his gospel tapes, making arrangements to pay the ticket, speaking with legal etc. |
| November 19, 2014 | Progress Notes<br>Veteran reports his last use of crack cocaine 6 months ago. Veteran reports drinking around 2. Veteran voiced no plans to ever quit drinking.<br><br>*Current Substance Abuse: Alcohol Drinking*<br>Substance Abuse History: Veteran reported that he began using drugs in 1978. *Since that time he has been to 2 treatments, completed in 2004 and currently in one.* Drug of choice was crack cocaine and alcohol. |
| January 2, 2015 | SCREEN FOR ALCOHOL (AUDIT-C)<br>    An alcohol screening test (AUDIT-C ) was positive (score = 9) .<br>    An alcohol screening test (AUDIT-C ) was positive (score = 9) .<br>    An alcohol screening test (AUDIT-C ) was positive (score = 9) .<br><br>1. How often did you have a drink containing alcohol in the past year?<br>    Four or more times a week<br><br>2. How many drinks containing alcohol did you have on a typical day when you were drinking in the past year?<br>    3 or 4<br><br>*3. How often did you have six or more drinks on one occasion in the past year?*<br>    *Daily or almost daily*<br>*Calculated number of drinks:*<br>    *per week: 21* |

| | |
|---|---|
| | *Discussed the recommended Limits of Alcohol Consumption, that are:*<br><br>    *Men:    <=14 drinks/wk and maximum of 4 drinks/occasion*<br>    *Women: <=7 drinks/wk and maximum of 3 drinks/occasion*<br><br>However, the patient was advised to abstain from alcohol use. Will discuss again at next visit. Medical problems associated with alcohol use were reviewed with the patient. Specifically the following were reviewed:<br><br>Depression:<br>    REFER to SUBSTANCE ABUSE TREATMENT PROGRAM or Alcohol Counseling<br>    Patient has been referred to Alcohol Abuse Counseling.<br>depression screening natl mod: [sic] |

These records paint a poignant and somewhat disheartening picture of a veteran suffering from multiple problems who was having trouble adjusting to civilian life. Some of those problems were caused by his drug and alcohol abuse. It is clear that for years doctors, therapists, and social workers at the VA tried to dissuade Parker from using drugs and alcohol and tried to persuade him to participate in Alcoholics/Narcotics Anonymous and/or other programs designed to help one cope with substance abuse problems.

The records clearly support the Plaintiff's conclusion that the Decedent had a substance abuse problem during the pertinent time period in question. They also support an argument that Parker, regardless of what happened in his private life—demotions, loss of employment, fights— and regardless of what he was advised by medical personnel, refused to accept how serious his abuse problem was and his need for treatment and/or abstinence.

It is this latter proposition that forms the crux of the Defendants' Response to the Motion for Summary Judgment. First, they argue that Parker never thought he had a drinking or drug

problem—therefore his answer on the policy application was not false. As a corollary they argue that mere inaccuracy does not vitiate the policy. They argue that in order for the Plaintiff to prevail, it must prove knowledge on Parker's part and an intent to defraud. Absent this measure of proof, Defendants' claim the policy cannot be rescinded and its benefits must be paid.

## B. Misrepresentations and Insurance Policies

In its Motion for Summary Judgment, Plaintiff contends that Parker's medical records prove that he misrepresented whether he received treatment for substance abuse in the timeframe specified on the insurance application. [Doc. No. 23 at 1]. Plaintiff provides evidence that on Parker's application for life insurance, he represented that he had not suffered from a substance abuse problem, nor had he received treatment for a substance abuse problem in the three years prior to filling out his insurance application. [*Id.* at 11-12]. As is evident from the selected records reproduced above, Plaintiff provides evidence that Parker had, in fact, suffered from and received treatment for a substance abuse problem in the time period specified on the application. [Doc. No. 22 at 9]. Based on this misrepresentation, Plaintiff argues that it was entitled to rescind the life insurance policy, thereby avoiding payment. [Doc. No. 23 at 1]. Defendants respond that there is no evidence that Parker abused substances, was treated for substance abuse, or that his representation on his insurance application was false; therefore, Plaintiff was not justified in rescinding the contract. [Doc. No. 26 at 6].

Traditionally, under Texas case law, there are five elements a movant must establish in order to rescind an insurance contract. The insurer must plead and prove the following: "(1) the making of the representation; (2) the falsity of the representation; (3) reliance thereon by the insurer; (4) the intent to deceive on the part of the insured in making same; and (5) the materiality of the representation." *Mayes v. Massachusetts Mut. Life Ins. Co.*, 608 S.W.2d 612,

616 (Tex. 1980). Although Texas courts have long abided by this test, in 2003 the Legislature recodified the Texas Insurance Code. *See Federated Life Ins. Co. v. Jafreh*, No. 09-20859, 2010 WL 3278362, at *3 (5th Cir. Aug. 18, 2010) (discussing the recodification of the Insurance Code). The amended version of the code took effect on April 1, 2005 and thus applies to this case. The recodified requirements for rescission appear in Chapter 705, "Misrepresentations by Policyholders."

In the recodified version of the rescission requirements, the applicable elements vary based on the type of insurance contract and the length of that contract's existence. There are three main subchapters within Chapter 705. Subchapter A of Chapter 705 applies to all insurance policies (subject to the exception described below), Subchapter B contains "Special provisions related to life, accident, and health insurance policies," and Subchapter C contains "Special provisions related to life insurance policies." Under Section 705.105, Subchapter A does not apply to insurance contracts (1) that contain provisions "making the policy incontestable after two years" and (2) "on which premiums have been duly paid." TEX. INS. CODE § 705.105. The insurance contract in this case contains a standard two-year incontestability clause, and for purposes of this analysis, the Court will hypothetically assume that premiums were "duly paid"; accordingly, Subchapter A will not be applied.[8]

Plaintiff argues that while provisions of Chapter 705 have replaced the five-element *Mayes* test, four of the elements (that is, all of the *Mayes* elements, minus the intent requirement) were incorporated into the new statutory construction. [Doc. No. 23 at 13]. Plaintiff points out that under Section 705.104, the intent requirement has been limited to apply only to policies that are more than two years old. Defendants respond that Plaintiff is still required to prove all five

---

[8] Above, the Court found that the insurance contract was properly cancelled due to Parker's failure to pay the April 2015 and May 2015 premiums. For the purposes of this analysis, the Court will assume that Parker has hypothetically paid all premiums. As a result, this contract falls under Section 705.051 rather than Section 705.004.

elements, including the intent requirement, as stated in *Mayes*. The Court will now discuss each of these elements and the parties' related arguments, saving the intent-requirement analysis for last.

Plaintiff has provided evidence that Parker made a representation on his application and that Parker's representation, as a matter of law, was false. A "representation is made if the applicant signs a statement indicating the answers in the application are true and correct when the policy is delivered," and untrue answers on an application constitute misrepresentations. *United of Omaha Life Ins. Co. v. Halsell*, No. SA-08-CV-1007-XR, 2010 WL 376428, at *3 (W.D. Tex. Jan. 25, 2010) (first quoting *Darby v. Jefferson Life Ins. Co.*, 998 S.W.2d 622, 628 (Tex. App—Houston [1st Dist.] 1995, no writ), then citing *Mayes*, 608 S.W.2d at 616); *see also* Tex. Ins. Code § 705.051 (requiring the insurer to demonstrate that the insured made a false misrepresentation on the application). In *Halsell*, the court found that the insurer properly rescinded the insurance contract based on the insured's misrepresentation about his history of substance abuse on the life insurance application. *Id.*[9] Here, as in *Halsell*, the signature line of the insurance application reads: "I have read the questions and my answers are true to the best of my knowledge and belief." [Doc. No. 23, Ex. 1 at 7]. Parker answered "no" when asked "In the past 3 years, have you had or been treated for: . . . drug or alcohol abuse. . .?" [Doc. No. 23, Ex. 1 at 7]. To the contrary, Plaintiff points to Parker's VA records (excerpts reproduced above), which show that he was both diagnosed and treated for alcohol abuse almost continuously for the three years preceding the insurance application date. [Doc. No. 23, Ex. 1 at 254].

The VA records are replete with entries by caregivers discussing Parker's substance abuse, stating things such as, "7/28/14: Problem: substance abuse Veteran reports daily drinking

---

[9] Although the insurance contract in *Halsell* was issued in February 2008, the court applied the *Mayes* test with no discussion of the recodification of the Texas Insurance Code (or its effect on the common law test).

'around 2.' Voiced no plans to ever quit drinking." [Doc. No. 22, Ex. 12]. There are numerous notations in these records demonstrating that Parker suffered from "substance abuse – alcohol," "Alcohol abuse," and "Substance dependence: alcohol." [*Id.*]. On December 30, 2011, Parker admitted to his doctors that he was drinking too much and asked to be put back on the medication (Acamprosate) that had previously helped with his alcohol abuse. The records show this medication was in fact prescribed. On June 26, 2014, Parker reported currently being in substance abuse treatment. On November 19, 2014, the Progress Notes stated: "Current Substance Abuse: Alcohol Drinking" and "Veteran reported he began using in 1978. Since that time he has been to two treatments, completed in 2004 and currently in one. Drug of choice was crack cocaine and alcohol." The application was dated October 30, 2014—so both before and immediately after the date where he represented he did not have and had not been treated for drug or alcohol abuse, he was in substance abuse treatment. In fact, this last medical visit was less than a week before the policy was issued. Defendants argue that this does not necessarily mean that Parker "regularly or repeatedly used drugs" or "excessively or compulsively used alcoholic drinks." [Doc. No. 26 at 7]. The Court does not find Defendants' argument convincing. These records eliminate any issue of fact concerning whether Parker suffered from substance abuse and/or received treatment for substance abuse in the three years preceding his representation on the application to the contrary.

Plaintiff has also provided evidence that it relied on Parker's misrepresentation.[10] "Reliance is established when the insurer does not know the representations are false." *Halsell*, 2010 WL 376428, at *4. Here, Colonial has provided evidence that it did not know that Parker's misrepresentations were false. [Doc. No. 23, Ex. 1 at 5 ¶ 24]. Further, it has offered

---

[10] Reliance is not explicitly addressed in Chapter 705 but appears in the *Mayes* test.

uncontroverted proof that if Parker had accurately answered "yes" to the substance abuse inquiry, it would have never issued the policy.

Plaintiff purports that its summary judgment evidence demonstrates that the misrepresentation was material, thereby satisfying the materiality element of the *Mayes* test and the codified version of the requirement. *See* TEX. INS. CODE § 705.051 (requiring the insurer to prove that the misrepresentation was material). "The representation is material if it actually induces the insurance company to assume the risk." *Halsell*, 2010 WL 376428, at *5 (first quoting *Darby*, 998 S.W.2d at 628, then citing *Robinson v. Reliable Life Ins. Co.*, 569 S.W.2d 28, 28 (Tex. 1978)). Here, as in *Halsell*, the insurer has submitted undisputed evidence that had it known the truth about the insured's substance abuse problem, it would not have issued the policy. [Doc. No 23, Ex. 1 at 5 ¶ 25]; *Halsell*, 2010 WL 376428, at *5. Accordingly, Plaintiff has shown that the insured's misrepresentation was material.

Finally, as for the intent requirement, Plaintiff alleges that since the policy was not two years old at the time of Parker's death, it is not required to establish intent under the recodified code. *See* TEX. INS. CODE § 705.104. Assuming *arguendo* that Parker had paid all of his premiums and that the insurance contract was not rescinded for failure to pay, Subchapter B of the Texas Insurance Code would apply.[11] Subchapter B states:

> A misrepresentation in an application for a life, accident, or health insurance policy does not defeat recovery under the policy unless the misrepresentation:
> (1) is of a material fact; and
> (2) affects the risks assumed.

---

[11] Section 705.004, located in Subchapter A, covers Misrepresentations in Policy Applications; however, pursuant to Section 705.105, Subchapter A does not apply to the contract in question. *See* discussion of TEX. INS. CODE § 705.105, *supra*. Moreover, there is no intent requirement in Section 705.004, making it even more likely that the Legislature chose to eliminate the intent requirement from the rescission analysis for policies in effect for less than two years. *See* Andrew C. Whitaker, *Update on Texas Law on the Rescission of Insurance Policies*, 13 J. TEX. INS. L. 23, 24 (2015) ("Since the Texas Legislature clearly knew how to impose an intent requirement, its refusal to include one in the statutes setting forth the elements of a rescission claim—Sections 705.004 and 705.051—provides further evidence that intent to deceive is no longer an element of a rescission claim during the first two years [of] a life insurance policy").

TEX. INS. CODE § 705.051.

Defendants do not dispute the applicability of TEX. INS. CODE § 705.051.[12] Instead, Defendants claim that "nothing in Section 705.051 of the Texas Insurance Code eliminates the requirement that a misrepresentation be intentional in order for the misrepresentation to void a life insurance policy"—in other words, that the intent requirement from *Mayes* was not eliminated. [Doc. No. 25 at 1]. Plaintiff disagrees, stating that the Legislature eliminated the intent requirement as described in *Mayes* by omitting the requirement from Section 705.051 and making the intent requirement apply only to insurance policies older than two years. Plaintiff cites TEX. INS. CODE § 705.104, which requires that an insurer prove that the misrepresentation was intentional if the policy is being contested "on or after the second anniversary of the date of issuance of the policy." Plaintiff argues that since the contract is less than two years old, only Section 705.051 applies.

Most Texas and related federal cases that discuss misrepresentations on insurance applications concern life insurance contracts that went into effect prior to the April 2005 recodification. Accordingly, there are no cases that clearly reconcile the inconsistency between the intent element from *Mayes* and the lack of an explicit intent requirement in parts of the updated legislation. Nevertheless, "prior law and legislative history cannot be used to alter or disregard the express terms of a code provision when its meaning is clear from the code when considered in its entirety, unless there is an error such as a typographical one." *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). Courts presume "that the legislature, in adopting the amendment, intended to make some change in the existing law, and therefore,

---

[12] As previously stated, Colonial has provided uncontroverted evidence that had Parker accurately answered "yes" to the substance abuse inquiry, it would have never issued the policy. Colonial has demonstrated that the misrepresentation was material and affected the risks assumed. *See* TEX. INS. CODE § 705.051(a)-(b).

[endeavors] to give effect to the amendment." *Suretec Ins. Co. v. Myrex Indus.*, 232 S.W.3d 811, 815 (Tex. App.—Beaumont Aug. 16, 2007, pet. denied).[13] Thus, where the Legislature was clearly aware of the *Mayes* test, yet opted not to include an intent requirement, this Court must conclude that this omission was intentional. Accordingly, this Court agrees that the policy at issue here is controlled by TEX. INS. CODE § 705.051, and that under this section, Plaintiff is not required to prove intent to deceive.

Under Section 705.104, an insurer must only prove intent to deceive where the insurance contract has been in effect for longer than two years. Section 705.104 states:

> A defense based on a misrepresentation in the application for, or in obtaining, a life insurance policy on the life of a person in or residing in this state is not valid or enforceable in a suit brought on the policy *on or after the second anniversary of the date of issuance of the policy* if premiums due on the policy during the two years have been paid to and received by the insurer, unless:
>> (1) the insurer has notified the insured of the insurer's intention to rescind the policy because of the misrepresentation; or
>> (2) it is shown at the trial that the misrepresentation was:
>>> (A) material to the risk; and
>>> (B) intentionally made.

TEX. INS. CODE § 705.104 (emphasis added). In other words, the section allows an insurer "to contest a life insurance policy two years after its date of issue" only if the insurer can prove that "the misrepresentation was material and intentionally made." *Federated Life Ins. Co.*, 2010 WL 3278362, at *3 (citing TEX. INS. CODE § 705.104). If Defendants are correct that an insurer must

---

[13] *See also Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742 at 748 (Tex. 2012) ("We presume the Legislature is aware of relevant caselaw when it enacts or amends statutes. Further, "[i]t is a firmly established statutory construction rule that once appellate courts construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume that the Legislature has adopted the judicial interpretation."); *Phelps v. State*, 532 S.W.3d 437, 443 n.6 (Tex. App.—Texarkana Apr. 10, 2017, pet. ref'd) (discussing amendments to the Texas Penal Code, stating "if the Legislature disagrees with the court's ruling, it can amend the statute, so that its failure to amend is considered as acquiescence to the court's ruling . . . Yet where the Legislature substantively amends a statute after a decision has been issued interpreting the statute, the courts can no longer engage in the assumption that the Legislature acquiesced in the prior case holding. . . . by amending the statute, the Legislature exercised its policymaking responsibility in response to the prior case. Thus, when faced with post-decision statutory amendment, [a court is compelled to reevaluate] the statute out of deference to the Legislature's supremacy on statutory issues.").

always prove intent to deceive, regardless of whether the policy was in effect for two or more years, then the language, "on or after the second anniversary of the date of issuance of the policy" would be superfluous. TEX. INS. CODE § 705.104. The Court "must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous." *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014). Accordingly, the Court again finds that Plaintiff is not required to prove intent to deceive.

In the present case, the policy was issued in November of 2014, meaning the 2005 recodifications of the Insurance Code apply. *See Federated Life Ins. Co.*, 2010 WL 3278362, at *3 ("It is the law in existence at the time of the issuance of the policy that applies."). Parker passed away within seven months after the insurance policy was issued. [Doc. No. 22 at]. Seven months is, of course, well within the two-year period described in TEX. INS. CODE § 705.104.[14] Thus, Plaintiff succeeds on this point as well—the policy was properly rescinded for misrepresentation on the application.

Nevertheless, even if intent is still required, Plaintiff has proven intent as a matter of law through Parker's VA records. These records show that Parker admitted having a drinking problem, asked for treatment, and received treatment, all during the pertinent three-year pre-application period. His answer to Question 3b is clearly incorrect because he both had and had been treated for substance abuse. While one can argue about whether Parker subjectively believed that he did not have a substance abuse problem (as he may have been in denial), it is clear that as a matter of law, Parker was treated for substance abuse and should have answered the question accordingly. Parker had to know what he was being treated for because he was the

---

[14] The policy itself included a standard two-year incontestability clause. [Doc. No. 23-1 at 3-4]. As previously stated, because Parker died within seven months of the policy effective date, this clause does not bar Plaintiff from contesting a material misrepresentation.

one who requested treatment and stated that the treatment medication (Acamprosate) had previously worked.

## VI.

Even viewing this evidence in the light most favorable to the Defendants, it is clear that Parker did not make the premium payments as required and the policy lapsed before his death. Further, even if Parker had made the premium payments, the VA records eliminate all issues of fact that Parker suffered from substance abuse and received treatment within the pertinent three-year window. Since the VA records show that Parker suffered from alcohol abuse for which he received treatment, he should have answered "yes" to the relevant question on his insurance application. By answering "no," Parker made a material misrepresentation upon which Plaintiff relied, and that misrepresentation under the law allows the insurer to rescind the insurance contract. That being said, the Plaintiff's Motion for Summary Judgment [Doc. No. 23] is granted, and the Defendants' Motion for Summary Judgment [Doc. No. 18] is denied. An appropriate judgment will be entered in a separate order.

SIGNED at Houston, Texas this 24th day of January, 2019.

Andrew S. Hanen
United States District Court Judge